## EMMA WALKER v. THE COUNTY OF RANDOLPH.

(Filed 29 January, 1960.)

**1. Trial § 22—**

On motion to nonsuit the evidence must be considered in the light most favorable to plaintiff.

**2. Negligence § 11—**

A person will not be held contributorily negligent as a matter of law in failing to see an apparent danger in those instances in which his attention is diverted or when he is naturally giving his undivided attention to other matters, if under the same circumstances an ordinarily prudent person would have been inattentive to the danger.

**3. Negligence § 37g—**

Evidence tending to show that a bulletin board in the hall of a courthouse extended some nineteen inches over a stairway leading to the basement, that plaintiff had never been in that part of the courthouse before, and that while gazing at the bulletin board, intent on finding a notice of sale of land in which she was interested, she moved sideways to her right and fell down the basement stairs to her injury, *is held* not to disclose contributory negligence on her part as a matter of law in failing to see the stairs, even though they were obvious had she looked, since whether she was negligent in failing to see the stairs while her attention was naturally diverted to the bulletin board is a question for the jury.

**4. Negligence § 33—**

Evidence that a county maintained a bulletin board in the hall of its courthouse with nineteen inches of the bulletin board extending over an unguarded stairway, resulting in injury to an invitee inadvertently stepping into the stairway while examining notices on the bulletin board, *held* sufficient to be submitted to the jury on the issue of negligence.

**5. Negligence § 37b—**

> A person in going into the county courthouse to search for legal notices required by law to be posted at the courthouse is not a licensee but an invitee.

APPEAL by defendant from *Thompson, Special Judge,* 25 May 1959, of RANDOLPH.

This is a civil action instituted by the plaintiff to recover damages from the defendant for injuries caused by the alleged negligence of the defendant in maintaining a bulletin board in the manner hereinafter set out.

It was stipulated by the parties through counsel of record, "That the defendant on July 17, 1958, and for a number of years prior thereto, provided and maintained for the use of posting public notices, bulletin boards on the inside walls at the front entrance of the main portion of the Randolph County Courthouse; that the bulletin board located to the west of such entrance measures 8 feet and 3 inches in length, 3 feet and 9 inches in width; that the bottom thereof is 45 inches from the floor and the top thereof is 90 inches from the floor; that the west end of said bulletin board extends 19 inches over the stairway leading into the basement of said Courthouse * * *."

The defendant stipulated in the court below, "that on the 17th day of July, 1958, there was in force a policy of liability insurance to indemnify the defendant from liability for negligence or tort in excess of the amount prayed for in the complaint in this action, which had theretofore been secured by the Board of County Commissioners of Randolph County, pursuant to G.S. 153-9.44, and that the defendant's governmental immunity from liability for damages by reason of injury to persons or property caused by the negligence or tort of the defendant was thereby and is now waived in this action."

The plaintiff was allegedly injured by falling down the stairway over which the bulletin board extended, while looking for a notice of sale of property in which she had an interest as a tenant in common, which notice had been posted on said bulletin board.

The plaintiff, who was 77 years of age at the time of the accident, testified: "I entered the Courthouse at the front door, walked about half or a third of the way of the hall and did not see the advertisement, and turned around * * *. When I turned I went to my right and saw a bulletin board. I started to look for the advertisement. The bulletin board was some higher than my head * * *. I had to lean back this way to see up to it. When I got to the bulletin board, I tried to read what was on it. I read one and it wasn't what I wanted. I looked a little further and saw one * * * I thought * * * was about

the right. length for the piece I had seen in the paper and I stepped over to see it and, when I did, I landed on the floor at the bottom of the stairs, the landing. * * * I was carried to the Randolph Hospital. My head felt like it was cracked, both arms were broke(n) and I hurt all over. * * * I remained in the hospital from the 17th day of. July till the 13th day of September. * * * As I moved along in front of the bulletin board looking for the notice of sale I was moving to my right."

On cross-examination, this witness testified, "I entered the Court-house * * * with (my niece) Mrs. Buren Lanier. * * * As I approached the bulletin board I walked up sort of to the middle of it and went to the right and she went to the left. It was sometime between 2:30, 3 or 4 o'clock. I think it was sort of sunshiny * * *. Nothing was said be-tween us from the time we walked to the board until I fell downstairs. When I walked up to the board, I walked to my right sideways." Questions were propounded to the witness and answered as follows: "Q. While you were walking sideways, did you at any time turn your head and look to the right? A. I was looking up on the board. Q. Did you ever actually take your eyes off the board and look to the right? A. No. After I looked up there and seen that, I didn't take my eyes off the board. I thought I'd see what it was. Q. During this time did you do anything other than read one notice and found that wasn't the one, and looked at the other notice? A. I just glanced all over the board, looking for what I thought I wanted, and when I spied the one I thought I wanted, from the length of it, that is when I stepped over a little and that is when I hit the landing down there."

Mrs. Buren Lanier testified for the plaintiff as follows: "We walk-ed in the front door (of the Courthouse) and neither one knew where the board was. So we walked straight in the hallway. I didn't see any-thing on the wall so we turned and looked back toward the front and saw the board on the right and walked immediately to it. The board was full of notices. We each started looking at the board * * *. We did not look but a few minutes until she fell. I knew that there was a tract of land in which Emma Walker had an interest and was up for sale at that time. Miss Emma is very small. The board was up quite a bit for her. Notices were posted to the top of the board and to the extreme western edge of it. * * *"

On cross-examination this witness testified, " * * * there was ade-quate light for us to read those notices without difficulty. * * * The area was adequately lighted. * * *"

At the close of plaintiff's evidence the defendant moved for judg-ment as of nonsuit. The motion was overruled. Defendant offered

no evidence, rested, and renewed its motion which was again overruled.

Issues of negligence, contributory negligence and damages were submitted to the jury, each of which was answered in favor of the plaintiff. Judgment was entered on the verdict, and the defendant appeals, assigning error.

*Archie L. Smith for plaintiff.*
*Coltrane & Gavin for defendant.*

DENNY, J.   The primary question to be determined on this appeal is whether or not the court committed error in overruling the defendant's motion for judgment as of nonsuit.

In our opinion, when plaintiff's evidence is considered in the light most favorable to her, as it must be on motion for judgment as of nonsuit, it is sufficient to take the case to the jury. *Pierce v. Insurance Co.,* 240 N.C. 567, 83 S.E. 2d 493; *Winfield v. Smith,* 230 N.C. 392, 53 S.E. 2d 251; *Grier v. Phillips,* 230 N.C. 672, 55 S.E. 2d 485.

We concede that this is a borderline case. In principle, however, we think the evidence falls within the category of the factual situations involved in *Dennis v. City of Albemarle,* 242 N.C. 263, 87 S.E. 2d 561 and *Hunt v. Meyers Co.,* 201 N.C. 636, 161 S.E. 74.

In *Dennis v. City of Albemarle, supra,* the evidence tended to show that the plaintiff was aware of the maintenance by defendant of the low wire across the highway near his home; that plaintiff, standing at the rear of a truck loaded with hay, with his head above the main load, was on the lookout for the wire, but that he did not know the exact height of the wire; that the wire was difficult to see because of the trees on either side of the highway, and as the truck was driven under the wire, plaintiff's attention was diverted by a workman calling to him from the steeple of a church along the highway. Instinctively, he looked in that direction and spoke to the workman. When he turned back, the wire struck the plaintiff in the mouth, threw him from the truck and caused him to suffer injuries. *Bobbitt, J.,* speaking for the Court, said: "The general rule, applicable here, is well stated in 65 C.J.S., 726, Negligence sec. 120, as follows: 'When a person has exercised the care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances, he is not negligent merely because he temporarily forgot or was inattentive to a known danger. To forget or to be inattentive is not negligence unless it amounts to a failure to exercise ordinary care for one's safety. Regard must be had to the exigencies of the situation, and the circumstances of the particular occasion. Circumstances may exist un-

der which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one's attention momentarily from the danger. In order to excuse forgetfulness of, or inattention to, a known danger, some fact, condition, or circumstance must exist which would divert the mind or attention of an ordinarily prudent person; mere lapse of memory is not sufficient, and, if, under the same or similar circumstances, an ordinarily prudent person would not have forgotten or have been inattentive to the danger, such conduct constitutes negligence."

In the case of *Hunt v. Meyers Co., supra,* the plaintiff's evidence was to the effect that about 12 July 1929 she went to the defendant's store to buy a raincoat and some shoes for her boy; that she was directed to the basement department, which was poorly lighted and dark, where the shoes were kept. That there was an aisle or passageway between the tables on which were shoes, and there was a stool between the tables. The stool could be moved around and was one that the clerk sits on to fit shoes, but was out of place and in the aisle, and in going along the aisle between the two tables to look for the shoes, plaintiff testified in part; "The next step I took, I caught my foot in this stool that was directly in my path. I was looking for shoes on the table, at the time I fell over the stool. * * * The shoe department is dark, it is under the balcony. No electric lights there. * * * Q. It was a movable stool and you were just along there and happened to hit the stool? A. Well, the stool — you didn't usually put stools in the aisle for people to fall over. Q. I didn't ask you that, you just happened to hit the stool; did you step on the stool? A. No, I did not step on it. Q. You stepped against it? A. The stool was directly in the aisle and I hooked my foot in it. * * * Q. Then it was light enough to see the shoes, the stairway, the clerk, that is right, isn't it? A. Yes, and if the stool had been sitting on the table I would have seen the stool. Q. If you had looked for the stool you could have seen it? A. We were not supposed to go along looking for the stool. Q. You did see it after you stepped on it.? A. Yes, I saw the girl pick up the stool and push it under the table. I was looking for that then."

The defendant, at the close of plaintiff's evidence and at the close of all the evidence, interposed motions for judgment as of nonsuit, which motions were overruled. The case was submitted to the jury on the issues of negligence, contributory negligence and damages, which were answered in favor of the plaintiff. The defendant appealed from

the judgment entered on the verdict, and this Court upheld the rulings below.

In order to excuse a person from discovering or seeing what he ordinarily would or should have seen, there must exist some fact, condition, or circumstance which would or might divert the attention of an ordinarily prudent person from discovering or seeing an existing dangerous condition.

In the instant case, the plaintiff was intent on finding a notice of sale at the time she fell down the stairway, which she could have seen had she looked. According to the evidence, however, she never realized the stairway was there until she fell down it. She had never been in this part of the Courthouse before. And, like the plaintiff in *Hunt v. Meyers Co.*, supra, who was looking for "shoes" and not for "stools" in the aisle, the plaintiff herein was looking for a "notice of sale" and not for a "stairway" underneath a portion of the bulletin board.

It would seem that whether the maintenance of an unguarded stairway underneath a portion of a bulletin board constituted negligence and was a proximate cause of the injury to the plaintiff, an invitee, who inadvertently stepped into the stairway while examining notices on the bulletin board, was a question for the jury. We think the issues of negligence and contributory negligence were properly submitted to the twelve. Among opinions from other jurisdictions supporting the conclusion we have reached are *Cheney v. S. Kann Sons & Co.*, 37 F. Supp. 493; *Marquis v. Goldberg* (1931, Mo. App.), 34 S.W. 2d 549; *Johnson v. Rulon*, 363 Pa. 585, 70 A 2d 325; *Groener v. F. W. Woolworth Co.*, 131 N.J.L. 311, 36 A 2d 398; *Hendricken v. Meadows*, 154 Mass. 599, 28 N.E. 1054; *Burkert v. Smith*, 201 Md. 452, 94 A 2d 460. See also 66 A.L.R. 2d Anno: Open Stairway or Trap Door — Injury, where cases bearing on the subject are collected and discussed, pp. 331 through 432.

It is said in 66 A.L.R. 2d, Anno: Open Stairway or Trap Door — Injury, page 389: "Plaintiff in *Cheney v. S. Kann Sons & Co.* (1941, D.C. Dist. Col.), 37 F. Supp. 493, sought damages for injuries sustained when she fell down a flight of * * * stairs in defendant's store. It appeared that, having examined dresses on a rack, plaintiff selected a dress therefrom, turned to get better light on it, took a step, and fell down the steps. The jury returned a verdict in plaintiff's favor, and defendant moved for judgment notwithstanding the verdict, arguing that plaintiff was contributorily negligent as a matter of law. The court, denying defendant's motion, acknowledged that as plaintiff walked toward the rack before examining the dresses she would have observed the stairs beyond the rack if she had looked,

and would also have observed the stairs if she had looked as she turned to get a better light on the dress she had selected, but, it was said, her failure to do so did not constitute contributory negligence as a matter of law under the circumstances presented, which showed that plaintiff had never been at the place at which she was injured before, that her attention was attracted to dresses as she walked toward the steps down which she fell, and that her attention was attracted to the dress she had selected as she turned to get a better light on it."

Defendant's assignment of error to the failure of the court below to sustain its motion for judgment as of nonsuit is overruled.

The defendant assigns as error the following portion of his Honor's charge to the jury: "And I instruct you further that the maintenance of the County of a board for the posting of public notices required by law constitutes and is an implied invitation on the part of the County to persons having an interest in notices posted upon such board to come there and examine the notices on such board and read and inspect same. And any person entering the courthouse building for the purpose of examining or looking for a notice which the person reasonably anticipates being there advertising some matter which the law requires to be advertised in which the person entering has a personal interest of some sort, is an invitee of the County when such person enters the building of the County courthouse for that purpose."

G.S. 1-339.17 requires that notice of public sale of real property shall be posted at the courthouse in the county in which the property is situated, for thirty days immediately preceding the sale. The fact that such notices are required to be posted, a person interested in such notices and who seeks to find the same on the bulletin board maintained by the county for such purpose, is not a mere licensee but an invitee, and we so hold.

In *Coston v. Skyland Hotel, Inc.*, 231 N.C. 546, 57 S.E. 2d 793, this Court quoted with approval from *Coffer v. Bradshaw*, 46 Ga. App. 143, 167 S.E. 119, as follows: "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such person for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe. The duty of the owner as occupier of premises to keep the premises safe for invitees extends to all portions thereof which the invitee may use in the course of the business for which the invitation is extended." *Leavister v. Piano Co.*, 185 N.C. 152, 116 S.E. 405.

This assignment of error is overruled.

No prejudicial error is shown by the remaining assignments of error that would justify a disturbance of the verdict in the trial below.

Hence, in law, we find

No error.