WILLIAM LARRY McDONALD, By HIS NEXT FRIEND, BERNICE TEDDER McDONALD, PLAINTIFF, v. MOORE SHEET METAL AND HEATING COMPANY, INC., AND NORMAN KELLOGG, DEFENDANTS.

(Filed 23 November, 1966.)

**1. Negligence § 22—**

The fact that defendant paid plaintiff's hospital bill, incurred as a result of the injury in suit, is not an implied admission of liability, and is incompetent in evidence.

McDONALD *v.* HEATING CO.

**2. Appeal and Error § 38—**

Assignments of error not brought forward in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**3. Trial § 21—**

Discrepancies and contradictions in plaintiff's evidence do not warrant nonsuit, since they are for the jury to resolve.

**4. Same—**

Upon motion to nonsuit, plaintiff's evidence must be interpreted in the light most favorable to him, giving him all reasonable inferences to be drawn therefrom.

**5. Automobiles § 7—**

While the motor vehicle statutes are not applicable when the vehicles in question are being operated upon private property, the common law rules of liability for injury proximately caused by negligence do apply, and therefore conduct which, in the absence of statute, would constitute negligence if occurring on a public highway will also be deemed negligence if occurring while vehicles are moving upon private property through a tunnel leading to a highway in the same manner as upon a heavily congested public highway.

**6. Negligence § 21—**

No presumption of negligence arises from the mere fact of injury.

**7. Negligence §§ 1, 7—**

Negligence is the doing of some act or the failure to do some act contrary to the conduct of a reasonably prudent man under the circumstances, and is actionable if injury to another is reasonably foreseeable, but the law does not require omniscience, and proof of negligence must rest on more than mere conjecture.

**8. Automobiles § 41r— Evidence held insufficient to show actionable negligence in causing plank to fall from defendant's truck and strike passenger in following vehicle.**

Plaintiff's evidence was sufficient to support findings that defendant driver laid across the body of the truck driven by him a number of loose two-by-eight planks, held in place only by their own weight, and that as he drove the truck through a tunnel on private property, one of these planks in some unexplained manner flew through the air and struck plaintiff, who was riding on the body of the following truck. The evidence further disclosed that a number of vehicles were traversing the tunnel, bumper to bumper, at some five miles per hour. There was no evidence that any part of defendant's truck or any plank thereon struck any portion of the tunnel, and no evidence of any sudden jerks or jolts at the time in the operation of defendant's truck. *Held:* Under the circumstances existing at the time of the accident it could not have been reasonably foreseen that the plank would fall from the truck and strike plaintiff, assuming that it did so, and nonsuit was properly entered.

APPEAL by plaintiff from *Latham, S.J.,* at the May 1966 Civil Session of RANDOLPH.

This is an action for damages for personal injuries alleged to have been received when the plaintiff was struck on the head by a piece of timber which flew off of a truck owned by the corporate defendant and driven by the individual defendant, Kellogg. The plaintiff appeals from a judgment of nonsuit.

The complaint alleges, and the answer admits, that Kellogg was driving a truck owned by the Heating Company with its knowledge and consent. The answer denies that he was acting in the course of his employment by the corporation.

The complaint alleges that Kellogg was negligent in the following respects: He constructed upon the corporation's truck a "grandstand," and operated the truck knowing that this "grandstand" was composed of timbers "loosely brought together" and likely to slide off the truck and injure the persons or properties of others; he operated the truck at a speed greater than was reasonable and prudent under existing conditions; he failed to keep a proper lookout; he drove the truck "upon the highway" carelessly and in wilful disregard of the rights and safety of others; and failed to keep the truck under proper control. The complaint further alleges that as Kellogg drove the truck beneath an underpass, leading from the grounds of the Charlotte Speedway, the "grandstand" struck the underpass, throwing one of the timbers from the truck driven by Kellogg into the pickup truck in which the plaintiff was riding as a passenger, so that it hit the plaintiff upon the head, inflicting serious injuries. The defendants filed a joint answer denying all allegations of negligence.

Their motion for nonsuit having been granted at the close of the plaintiff's evidence, the defendants offered no evidence, though the defendant Kellogg testified when called as a witness for the plaintiff. As to the following matters, there is no conflict in the evidence offered by the plaintiff:

The events in question took place on the property of the Charlotte Speedway, in a tunnel or passageway running beneath its race track and affording ingress and egress for vehicular traffic moving between the public highway and the "infield" of the racetrack.

On the afternoon in question, the plaintiff and his companions, in a pickup truck, and Kellogg and his companions, in the Heating Company's one-ton stake body, Chevrolet truck (hereinafter called Kellogg's truck), went to and parked in the "infield" and viewed automobile races upon the track of the Speedway. After the races, both vehicles were passing through the tunnel toward the highway. There were two lanes of traffic passing through the tunnel in the same direction, Kellogg's truck being in the right lane and the pickup truck being in the left lane. The plaintiff was sitting in

the bed of the pickup, with his back to its cab and on the side nearest Kellogg's truck.

Throughout the length of the tunnel its roof and the track above it were supported by concrete pillars placed from six to eight feet apart, each pillar being two feet square. This row of pillars separated the two lanes of vehicles. A guard rail, three feet high, ran throughout the length of the tunnel on each side of the lane used by Kellogg. The rail on his right was three feet from the right side of the tunnel. That on his left was three feet from the line of pillars supporting the roof. There were similar guard rails along the lane used by the pickup in which the plaintiff was riding.

The plaintiff was struck upon the head by a plank while the pickup truck was within the tunnel, approaching its exit on the highway side of the track. The plaintiff, himself, remembers nothing about being struck and does not know what hit him. No witness actually saw the blow.

In each lane of travel the vehicles were moving "bumper to bumper" at a speed of only some five miles per hour, with innumerable stops and starts. Upon observing the injury to the plaintiff, his companions caused the driver of the pickup to stop and, running to Kellogg's truck, notified him that there had been an injury to the plaintiff. Thereupon, Kellogg stopped just outside the tunnel, walked back and picked up from his own lane of travel a piece of timber (variously described) which had been upon Kellogg's truck when it left the "infield" and started through the tunnel.

Each vehicle, while in the "infield," had upon it a type of platform placed thereon by the occupants of the vehicle and upon which they sat or stood while viewing the races. These were still upon the vehicles as they entered the tunnel to leave the Speedway property. All or part of the platform which had so been placed upon Kellogg's truck came off of it in the passage through the tunnel. There was no one riding in the bed of Kellogg's truck.

By reason of his injury, the plaintiff was carried to a hospital, where he received medical attention, the evidence as to the nature of his injuries not being material to this appeal.

In the following testimony offered by the plaintiff, certain discrepancies and conflicts will be observed:

One companion of the plaintiff testified that loose two-by-eight or one-by-eight planks lay across Kellogg's truck, resting upon the tops of the sides of the truck bed. Another testified that the plank which struck the plaintiff was a two-by-eight which was eight to ten feet long and came off of Kellogg's truck. This witness testified that after the plaintiff was injured, an occupant of Kellogg's truck "got the plank from the tunnel entrance." A third companion

of the plaintiff testified that the planks so lying across the top of the bed of Kellogg's truck were loose and that the plank, which he observed on the ground after the plaintiff was injured, was "something like a one-and-a-half-by-five." and was six or eight feet in length.

The plaintiff and one of his companions testified that the structure built upon the pickup truck, in which the plaintiff was riding, was nailed together and braced, leaving the sides open from the top of such structure down to the sides of the pickup truck bed.

Kellogg, called as a witness by the plaintiff, described the platform, which lay upon and came off of Kellogg's truck, as a piece of crating about three feet wide, seven feet, four inches long, and an inch and a half thick. (He subsequently estimated its length at eight feet, three inches.) Its weight was about 20 pounds. It lay across the bed of the truck, resting upon the sides of the truck body and extending eight or nine inches beyond the truck body on each side. A "piece" was nailed to each end of the crate so as to extend downward over and outside of the truck body. This platform was not fastened in any way to the truck body but was held in place only by its own weight. After the injury to the plaintiff, Kellogg picked up a "piece" of this crating from the ground within his lane of traffic. The platform, while resting upon Kellogg's truck, did not strike any piling. "It couldn't have." There was no other loose plank on the rear of Kellogg's truck. In driving through the tunnel Kellogg's truck did not jerk or jump as it started and stopped with the line of traffic.

Kellogg further testified that a tarpaulin was stretched over the structure built upon the pickup truck in which the plaintiff was riding, which tarpaulin came down all the way along each side of the pickup truck, covering all of the area between the top of the structure and the side of the truck bed.

*Ottway Burton and John Randolph Ingram for plaintiff appellant.*

*Miller and Beck for defendant appellees.*

Lake, J. Upon direct examination of the defendant Kellogg, who was called as a witness for the plaintiff, concerning a conversation with the father of the plaintiff at the hospital, the plaintiff propounded this question: "Did you discuss the hospital bill?" Objection thereto was sustained. If the witness had been permitted to answer, he would have testified, "I paid the hospital bill." There *is* no merit in this assignment of error. The fact that the defendant paid the plaintiff's hospital bill is not an implied admission of lia-

bility, and evidence of such payment is not competent, nothing else appearing. *Hughes v. Enterprises,* 245 N.C. 131, 95 S.E. 2d 577, 63 A.L.R. 2d 685; *Brown v. Wood,* 201 N.C. 309, 160 S.E. 281.

Other assignments of error relating to the exclusion of evidence offered by the plaintiff are not discussed in the brief and are, therefore, deemed abandoned. Rule 28 of the Rules of Practice in the Supreme Court.

The remaining assignment of error relates to the granting of a motion for judgment of nonsuit. Such a motion cannot be sustained on the ground that there are discrepancies and contradictions in the evidence offered by the plaintiff, such as conflict between the testimony of the defendant called as a witness for the plaintiff and the testimony of other witnesses for the plaintiff. Such discrepancies and contradictions in the plaintiff's evidence are for determination by the jury. *Saunders v. Warren,* 264 N.C. 200, 141 S.E. 2d 308; *Benton v. Montague,* 253 N.C. 695, 117 S.E. 2d 771; *Bell v. Simmons,* 247 N.C. 488, 101 S.E. 2d 383; Strong, N. C. Index, Trial, § 21. The plaintiff's evidence must be interpreted in the light most favorable to him and all reasonable inferences in his favor must be drawn therefrom. *Coleman v. Colonial Stores, Inc.,* 259 N.C. 241, 130 S.E. 2d 338; *Redden v. Bynum,* 256 N.C. 351, 123 S.E. 2d 734.

So interpreted, the plaintiff's evidence is sufficient to support findings that the defendant Kellogg laid across his truck a number of loose two-by-eight planks, the ends of which rested upon the tops of the side boards of the truck, each plank being held in place only by its own weight, and, as he drove the truck through the tunnel, one of these planks came off of the truck in some manner not explained, flew through the air, and struck the plaintiff upon the head.

The plaintiff alleged in his complaint that Kellogg was negligent in that he operated the truck "knowing that the loosely brought together timbers forming this homemade grandstand would be likely to slide off and injure persons," and that the "negligently constructed, rickety grandstand hit the concrete underpass, throwing timbers into the pickup truck." There is no evidence that any part of the truck or of any plank thereon struck any portion of the tunnel. The only evidence is to the contrary.

There is no evidence to support any other allegation of negligence in the complaint. The plaintiff's case must, therefore, stand or fall upon the sufficiency of the above facts to support the allegations concerning the "grandstand" and the sufficiency of those allegations to constitute negligence.

Although, at the time of the events in question, the two vehicles were being operated upon private property of the Speedway, and

not upon a public highway, it was incumbent upon Kellogg to use that degree of care in the operation of the truck which a reasonable man would use under like circumstances. Though the statutes applicable to the operation of motor vehicles upon public highways would not apply to such operation elsewhere, the common law rules of liability for injury proximately caused by negligence do apply. *Bennett v. Young,* 266 N.C. 164, 145 S.E. 2d 853. Kellogg knew, or should have known, that vehicular traffic was moving through the tunnel in the same manner as upon a heavily congested public highway. Therefore, conduct by him which, in the absence of statute, would have constituted negligence if it had occurred upon a congested public highway must be deemed negligence if it occurred while driving through this tunnel.

Proof of an injury, without more, does not raise a presumption of negligence. *Spell v. Contractors,* 261 N.C. 589, 135 S.E. 2d 544. Negligence is the doing of an act which a reasonable man would not do under the same circumstances, or the failure to do an act which a reasonable man would not omit under similar circumstances. An act or omission does not constitute actionable negligence unless a reasonable man could have foreseen that injury to another would be likely to occur from such act or omission. *Pinyan v. Settle,* 263 N.C. 578, 139 S.E. 2d 863; *Electric Co. v. Dennis,* 255 N.C. 64, 120 S.E. 2d 533; *Priest v. Thompson,* 254 N.C. 673, 119 S.E. 2d 613. "The law does not require omniscience and proof of negligence must rest on a more solid foundation than mere conjecture." *Clark v. Scheld,* 253 N.C. 732, 117 S.E. 2d 838.

Assuming that it might reasonably be foreseen that a loose plank of the size here described, lying flat across the top of a truck, might blow off or be shaken off and do injury to another if the truck were operated at a high speed or over such terrain or in such a manner as to cause violent vibration, it does not follow that it could be reasonably foreseen that such a plank would fall off so long as the truck was operated without sudden jerks and jolts, and at a speed not in excess of five miles per hour. Actionable negligence by Kellogg at the time the plaintiff was injured cannot be predicated upon an assumption that when Kellogg reached the open highway, he intended to operate at a greater speed.

There being no evidence that the truck or the plank struck any part of the tunnel or that the truck was proceeding otherwise than at an exceedingly low speed and without jolting or jerking, the cause of the plank's falling from the truck and striking the plaintiff, assuming that it did so, is left in the realm of conjecture and

speculation. The granting of the motion for judgment of nonsuit was, therefore, proper.

Affirmed.